FRANK J. HIGGINS *vs.* CHARLES J. FITZGERALD.

Suffolk.   December 7, 1928. — February 2, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Bills and Notes*, Validity. *Intoxicating Liquor*. *Evidence*, Relevancy and materiality.

In an action by the payee of a promissory note against the maker, the defendant alleged illegality of consideration as a defence.  It appeared that in 1920 the plaintiff sold to the defendant for $5,000 certificates representing one thousand gallons of whiskey in a bonded warehouse, and that the note was given in connection with that sale.  The defendant offered to show that he was not interested in the withdrawal of the whiskey but in the disposal of the certificates and that he did dispose of them;  and that he had a conversation with the plaintiff at the time of the sale wherein it was stated that the then market value of whiskey was sixty cents a gallon with storage charges and shrinkage; that the defendant told the plaintiff he thought he could dispose of the certificates for as much as $5 a gallon;  and that the defendant "conveyed to . . . [the plaintiff] the information that it [the sale] was contingent upon the withdrawal of the goods from bond," although the defendant did not expressly specify that "the $5,000 was contingent upon the sale of the whiskey if the whiskey could be illegally withdrawn."  The trial judge excluded such evidence and ordered a verdict for the plaintiff.  *Held*, that
    (1) Under 41 U. S. Sts. at Large, 305, 308, 309, the sale of the certificates in itself was not illegal;
    (2) The testimony excluded did not show such knowledge on the part of the plaintiff of an illegal purpose on the part of the defendant or a subsequent purchaser of the certificates as would render the sale of the certificates to the defendant illegal;
    (3) The testimony properly was excluded;
    (4) The verdict properly was ordered for the plaintiff.

CONTRACT.   Writ in the Municipal Court of the City of Boston dated May 11, 1925.

Upon removal to the Superior Court, the action was tried before *Flynn,* J.   Material evidence and an offer of proof by the defendant are described in the opinion.   The judge ordered a verdict for the plaintiff in the sum of $1,600, and the defendant alleged exceptions which were allowed by *P. J. O'Connell,* J., after the death of *Flynn,* J.

*J. P. Walsh,* for the defendant.

*S. A. Dearborn,* for the plaintiff.

CROSBY, J.   This is an action on three promissory notes executed by the defendant as maker, one for $850, and two for $500 each, and payable to the order of the plaintiff.   The answer as amended is a general denial, payment, want of consideration and illegality of consideration.   At the trial the plaintiff offered the notes in evidence and rested.

The defendant offered evidence to show that the plaintiff was the owner of certain certificates representing one thousand gallons of whiskey in a bonded warehouse, which, in 1920, he sold to the defendant for $5,000; that the defendant paid the plaintiff $2,500 in part payment and the certificates were delivered to him.   In 1923, the plaintiff brought an action to recover the balance due, and attached the defendant's automobile.   Thereafter, in settlement of that action, the defendant paid the plaintiff $500 and gave him the three notes upon which this action is brought to recover the balance due.

In the absence of the jury, the defendant made an offer of proof of a conversation between himself and the plaintiff in 1920 in reference to the sale of the certificates.   At that time the defendant told the plaintiff he thought he could dispose of the certificates, stating, "We can get as much as $5 a gallon, I think."   There was further talk along that line, and that the market value of the whiskey at the time was approximately sixty cents a gallon with storage charges and shrinkage.   The defendant was then asked "Whether or not the $5,000 was contingent upon the sale of the whiskey if the whiskey could be illegally withdrawn?" and he replied: "I doubt whether I incorporated that in the agreement, but at that time I talked with Mr. Higgins and conveyed to him the information that it was contingent upon the with-

drawal of the goods from bond." He testified that his interest was not in the withdrawal of the liquor but in the disposal of the certificates and that he did dispose of them. He further testified that at some time before the first suit was commenced, in 1923, the plaintiff asked him what he was going to do about the balance due on the certificates and he said: "I told him my information was that the party who had paid me hadn't got the goods out, and the result was he was waiting for the goods to be taken out, at which time he would pay me the balance of the certificates." The defendant offered to show that before the first action was brought the plaintiff told him he would bring suit for the balance due him, and the defendant replied: "If you feel as though you want to, in view of the circumstances, go and bring suit and have the thing aired in court on the question of the disposal of the liquor why that is up to you and not up to me." The trial judge excluded the offers of proof and the defendant excepted.

It is the contention of the defendant that the evidence was admissible; that it warranted a finding that the agreement was founded upon an illegal consideration and was therefore a defence to the present action. There was no evidence to show that the defendant acted as agent for an undisclosed principal, or in any capacity other than as principal in the purchase of the certificates. Moreover, no question of agency is argued by the defendant. He testified that he "wasn't interested in the withdrawal of the liquor," and that all he "was interested in was the disposal of the certificates." The purchase and sale of warehouse receipts covering distilled spirits on deposit in government bonded warehouses are expressly permitted by Act of Congress of October 28, 1919, c. 85, Title II, § 3, known as the National Prohibition Act, 41 U. S. Sts. at Large, 305, 308, 309. We find nothing in the evidence offered by the defendant showing any illegality entering into the contract, and nothing in the agreement indicating that the sale was conditional or contingent upon the illegal withdrawal of the whiskey. Although there was evidence that the plaintiff was informed by the defendant that the payment of the $5,000 was con-

tingent upon the withdrawal of the goods from bond, no question was raised as to the genuineness of the certificates under which the liquor could be legally withdrawn. The purpose of the person to whom the defendant was to sell the certificates and dispose of the same illegally was not known to the plaintiff and cannot affect the validity of the sale by the plaintiff to the defendant. Even if the plaintiff surmised that the ultimate purchaser of the certificates was to withdraw the whiskey illegally, his right to recover in the present action is not thereby affected.

It was said by Holmes, C.J., in *Graves* v. *Johnson*, 179 Mass. 53, at page 58: "All that it is necessary for us to say now is that in our opinion a sale otherwise lawful is not connected with subsequent unlawful conduct by the mere fact that the seller correctly divines the buyer's unlawful intent, closely enough to make the sale unlawful. It will be observed that the finding puts the plaintiffs' knowledge of the defendant's intent no higher than an uncommunicated inference as to what the defendant was likely to do. Of course the defendant was free to change his mind, and there was no communicated desire of the plaintiffs to coöperate with the defendant's present intent . . . but on the contrary an understood indifference to everything beyond an ordinary sale in Massachusetts." *Adams* v. *New England Maple Syrup Co.* 210 Mass. 475, 480. *Kalem Co.* v. *Harper Brothers*, 222 U. S. 55. It was said by Holmes, J., in the case last cited, at page 62: "It has been held that mere indifferent supposition or knowledge on the part of the seller that the buyer of spirituous liquor is contemplating such unlawful use is not enough to connect him with the possible unlawful consequences, *Graves* v. *Johnson*, 179 Massachusetts, 53, but that if the sale was made with a view to the illegal resale the price could not be recovered." The connection between an unlawful act of the ultimate purchaser and the sale of the certificates by the plaintiff is too remote. The illegality of one contract does not extend to another contract unless the two are united either in consideration or promise. *Hanover National Bank* v. *First National Bank*, 109 Fed. Rep. 421, 425, 427; *S. C.* 48 C. C. A. 482, 487, 488. *Kansas City Hydraulic Press*

*Brick Co.* v. *National Surety Co.* 167 Fed. Rep. 496, 500.
No illegality in the original contract having been shown, the
settlement of an action based upon such contract is a valid
consideration for the notes.

*Exceptions overruled.*