UNITED-CARR INCORPORATED *vs.* CAMBRIDGE
REDEVELOPMENT AUTHORITY.

Middlesex.   September 12, 1972. — November 15, 1972.

Present: TAURO, C.J., QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Evidence,* Of value, Extrinsic affecting writing.   *Words,* "Compulsion."

In a proceeding to determine just compensation for land taken by eminent domain, evidence of a sale of a nearby parcel was properly admitted as comparable, even though the purchaser had a special need for the parcel, where the court's instructions left it to the jury to determine what weight should be given to such special need and there was no indication the purchaser was compelled to buy at any price [599–601]; moreover, parol evidence by the seller of the parcel as to his allocation of the sale price between the parcel and submerged land with which it was sold was properly admitted, even though no such allocation appeared in the written sale agreement, where the condemnee was not a party to the agreement and thus not bound by the parol evidence rule [601–602].

PETITION filed in the Superior Court on January 25, 1968.

The case was tried before *Brogna,* J.

*John Paul Sullivan* for the respondent.

*James P. Lynch, Jr.,* for the petitioner.

TAURO, C.J.   The case is here on the respondent's exceptions to the admission of certain evidence, the denial

of its motion to strike certain evidence and the refusal of the trial judge to give certain instructions to the jury. The jury returned a verdict for the petitioner in the sum of $320,000.

The pertinent facts are as follows: On February 4, 1966, the respondent, Cambridge Redevelopment Authority (authority), by eminent domain proceedings, took the petitioner's property in Kendall Square, Cambridge. At the trial one of the two expert witnesses for the petitioner testified that the property was worth $340,000 and the other testified that the property was worth $360,000. An expert for the authority placed the value at $235,000.

As evidence of a comparable sale the petitioner introduced testimony that a nearby parcel was sold by one Horace O. Bright as trustee to Massachusetts Institute of Technology (M. I. T.) for $600,000. The authority on cross-examination and by direct testimony introduced evidence tending to show that M. I. T. had a special need for the property, that M. I. T. had to acquire the property before the end of the Federal fiscal year (1964) to qualify for certain Federal grants and that M. I. T. needed the property to avoid a possible zoning violation. The authority then moved to strike the evidence of the sale to M. I. T. on the ground that it was a forced sale and not admissible as a free market transaction. The respondent's motion was denied subject to its exception.

Prior to the court's charge to the jury, the respondent made several requests for instructions. Request no. 11 dealt specifically with the issue of whether the sale to M. I. T. was voluntary and involved land comparable to the land taken.[1]

Request no. 12 had reference to some evidence that the

---

[1] "11. During the course of the trial, there has been testimony as to prices at which other properties have been sold. If after consideration of all the relevant evidence, you find that these sales involve land similar in essentials to the taken parcel and that the purchaser and seller were not dealing under compulsion or under special need then you may give such sales whatever weight you deem proper. On the other hand, if you find that either the seller or buyer were under some particular compulsion or special need then you should disregard such sale."

M. I. T. sale actually involved two separate and distinct parcels of land, one of which was submerged beneath the Charles River.[2]  The respondent also argues that the judge failed to give fair and complete instructions to the jury in connection with factors raised in requested instructions numbered 11 and 12.

1.  We believe that the judge below properly refused to strike the evidence relating to the M. I. T. sale and that his refusal to instruct the jury as requested by the respondent was not error.  The law is well established that comparable sales are admissible unless there is a compulsion upon the seller or purchaser, or special circumstances, sufficient to preclude a free market.  *Nonni* v. *Commonwealth,* 356 Mass. 264.  The authority argues that the evidence of the sale to M. I. T. should have been excluded because the circumstances were such as to preclude a free market.  The authority further argues that this evidence was highly prejudicial.[3]  Generally, it is for the trial judge to make the preliminary determination before admitting the evidence whether the sale was freely made and whether it presents a comparable transaction.  "His decision of it, unless so wrong as to constitute error of law, cannot be disturbed on exceptions." *Epstein* v. *Boston Housing Authy.* 317 Mass. 297, 300. *Alden* v. *Commonwealth,* 351 Mass. 83, 86.  If the sale is made under compulsion, then evidence relating to that sale must be excluded.  *Cobb* v. *Boston,* 112 Mass. 181. Hence the question to be decided is whether the M. I. T.

---

[2] "12. You have received oral testimony with respect to the terms of the sale of property by a witness, Mr. Bright.  He indicated that a separate payment was made for each of the two parcels of land involved in a transaction between him and M.I.T.  However, you have in evidence the actual agreement between M.I.T. and Mr. Bright.  If you find upon reading that instrument that no such allocation is made between the two parcels, then you must disregard Mr. Bright's testimony in this matter because the language of the instrument is controlling."

[3] The respondent's argument concerning the M. I. T. sale would have greater force if this were the only evidence in the case or if the jury had returned a verdict approximating $600,000.  On the contrary it is apparent that the jury considered the testimony of the several experts and largely discounted the M. I. T. sale price in arriving at a verdict of $320,000.

sale was carried out in circumstances which would indicate that the sale price was not a useful criterion of value; that is whether, as a matter of law, there was a sufficient degree of compulsion to exclude the evidence.

The evidence as to the nature of the compulsion in the M. I. T. sale was presented by M. I. T.'s planning officer. He stated that the institute's use of the abutting lot violated the Cambridge zoning ordinance and that acquisition of part of the Bright lot was necessary to cure a possible zoning violation; M. I. T. intended to construct a student counselling project on the lot; the site had to be acquired before June 30, 1964, so that the institute could receive Federal funds for construction of the project. It should be noted that the jury heard the evidence relating to the circumstances surrounding M. I. T.'s purchase and that the judge's instructions left it to the jury to determine what weight should be given to M.I.T.'s special need for acquiring the lot. There was no error in the inclusion of the M. I. T. sale as evidence, or in the judge's instructions to the jury which were fair and complete.

We have placed a narrow interpretation on the nature of the "compulsion" necessary to compel exclusion in this context. In *Epstein* v. *Boston Housing Authy.* 317 Mass. 297, 300, we spoke of "duress, fraud, or imperative need for immediate cash at any cost," as precluding a free market. We also indicated that "[t]he price received upon a sale to a municipality or corporation possessing the power of eminent domain is not necessarily excluded, for the element of compulsion may be very small or non-existent, and the price may furnish a useful index of value." In *Cobb* v. *Boston*, 112 Mass. 181, 183–184, we held that "A price so fixed by compromise, when there can be no other purchaser, and the seller has no option to refuse to sell, and can only elect between the acceptance of the price offered and the delay, uncertainty, and trouble of legal proceedings for an assessment, is not a reasonable or fair test of market value." There we held that evidence of a sale under such conditions was prop-

erly rejected. However, in the circumstances of the instant case there is no hint of duress or fraud and the evidence did not require a ruling that M. I. T. was under such pressure that it had no option but to buy at any price dictated by Horace O. Bright. The issue was properly left to the jury on all the evidence.

*Maher* v. *Commonwealth,* 291 Mass. 343, relied on by the authority to support its proposition that fair market value may not take into account "peculiar and special circumstances," actually involved the exclusion of an estimate by the landowner which admittedly was based substantially on the opinions of others and included an element of sentimental value to the owner. "Sentiment of the individual owner has no place in estimating such value." 291 Mass. at 348. There is no suggestion that the price of the Bright lot purchased by M. I. T. improperly included sentimental value.

2. The deed from Bright as trustee to M.I.T. conveyed land partly on the banks of the Charles River and partly under the river. There was evidence that the submerged portion had a value of $1,500 and the remainder had a value of $600,000. United-Carr revealed on cross-examination that there was no prior allocation of the prices paid for the lots expressed in the written agreement to convey the land. The authority argues that it was contrary to the parol evidence rule to allow Bright to testify as to the prices allocated for each of the two parcels conveyed by his deed to M. I. T. Since the agreement did not make any allocation in price between the lots, it is argued that any prior agreement as to allocation in price must be considered merged in the final agreement to convey the land. We cannot agree. United-Carr was not a party to the agreement and the general rule is that nonparties are not bound by the parol evidence rule. See *Boronskis* v. *Texas Co.* 344 Mass. 477, and cases cited at 480. In *Guaranty Security Corp.* v. *Eastern S.S. Co.* 241 Mass. 120, 123, we held that "The rule excluding parol evidence to contradict a written instrument is not infringed when . . . a third person, who

does not claim under the written instrument, seeks to show that it was not the real contract between the parties." Where, as in the case before us, a petitioner not itself a party to the written instrument in question seeks to interpret that instrument by the testimony of a person who was a party to the instrument, the testimony is properly permitted. It was, therefore, no error for the judge below to refuse to instruct the jury to disregard the testimony of the price allocation.

*Exceptions overruled.*